UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHANIEL DUNTON, III,<br><br>                    Petitioner,<br><br>      vs.<br><br>DAVID ROCK,[1] Superintendent, Great Meadow Correctional Facility,<br><br>                    Respondent. | No. 9:06-cv-00940-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Nathaniel Dunton, III, appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently in the custody of the New York State Department of Correctional Services incarcerated at the Great Meadow Correctional Facility. Following a trial by jury, Petitioner was convicted in the Rensselaer County Court of two counts of Robbery in the First Degree (N.Y. Pen. Law § 160.15(2), (4)), one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Pen. Law § 265.03(2)), and one count of Grand Larceny in the Third Degree (N.Y. Pen. Law § 155.35). Petitioner was sentenced to concurrent determinate terms of 25 years on each of the robbery counts, 15 years on the weapons charge, and a concurrent indeterminate term of imprisonment of three and one-half to seven years on the larceny charge.

      Petitioner timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction on June 16, 2005, and the New York Court of Appeals denied leave to appeal on August 24, 2005. *People v. Dunton*, 797 N.Y.S.2d 166 (N.Y.A.D.), *lv. denied*, 836 N.E.2d 1157 (N.Y. 2005). Petitioner timely filed his petition in this Court on August 3, 2006.

---

[1] David Rock, Superintendent, Great Meadow Correctional Facility, substituted for Brian Fischer. Fed. R. Civ. P. 17(d).

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000), which in this case was that of the Appellate Division, Third Department, affirming his conviction.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law.  28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  It is also presumed that the state court knew and correctly applied state law.  *See Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Fry v. Piler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

Petitioner presents his claim in three grounds: (1) That his request for assignment of new counsel was ignored; (2) whether he abandoned his request for reassignment of counsel; and (3) whether his right to effective counsel was violated by his continued representation by counsel with whom he had a conflict. Respondent concedes that Petitioner exhausted his state court remedies.

The Appellate Division, in rejecting Petitioner's position, held (798 N.Y.S.2d at 166–67):

> Defendant was assigned counsel who, among other things, twice sought bail on defendant's behalf and filed an omnibus motion requesting pretrial discovery and suppression hearings and a demand for a bill of particulars. A *Huntley/Mapp* hearing was granted and, after two days of testimony, County Court denied defendant's motion to suppress the evidence. Shortly thereafter, defendant filed a pro se motion requesting reassignment of counsel, contending that his attorney had not visited him to discuss his case and had not conducted an investigation or informed him of any pertinent motions made on his behalf. Counsel responded and defended his representation and, on June 26, 2002, County Court denied defendant's request. Three months later, defendant proceeded to trial, was found guilty on all counts and was sentenced to an aggregate prison term of 25 years. At sentencing, County Court denied defendant's pro se motion claiming ineffective assistance of trial counsel. Defendant now appeals.
>
> Defendant's claim that County Court did not address his pretrial motion for reassignment of counsel until the time of his sentencing is belied by the record, which reflects that County Court resolved the matter three months before trial when it denied defendant's pro se request in this regard. In any event, the motion was properly denied as "[t]he law is now well established that a defendant may be entitled to new assigned counsel upon a showing of good cause for a substitution, such as a conflict of interest or other irreconcilable conflict with counsel" (citations omitted). Here, defendant made no claim of a conflict of interest, nor did his motion, in which he expressed dissatisfaction with his attorney, "suggest a serious possibility of irreconcilable conflict between defendant and counsel" (citations omitted). Therefore, substitution was not warranted. Based on the record before us, defendant received meaningful representation (citation omitted).

First, the finding of the Appellate Division that the County Court did not "ignore" Petitioner's *pro se* request for reassignment of counsel is fully supported by the record. Under AEDPA deference, this finding stands unless refuted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This hurdle Petitioner has failed to clear. Even assuming that the trial court did not explicitly rule on Petitioner's request or that he did not receive the decision-letter

denying his request, Petitioner was not prejudiced by either its implicit denial or his failure to receive the decision-letter, and the continued representation by appointed counsel.

> "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Blau,* 159 F.3d 68, 74 (2d Cir.1998). In the absence of a conflict of interest, a defendant claiming ineffective assistance of counsel must demonstrate that the lawyer's representation "fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that counsel's deficiency was "prejudicial" to the defense, *id.* at 692, 104 S.Ct. 2052. However, "[p]rejudice is presumed . . . if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler* [446 U.S.] at 350, 348, 100 S.Ct. 1708 (footnote omitted)." *Id.* These components are considered in a single, integrated inquiry. "[T]he *[Cuyler v.] Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor,* 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

*Eisemann v. Herbert*, 401 F.3d 102, 107 (2d Cir. 2005).

Petitioner stated in support of his request to the Rensselaer County Court:

> 6. The basis of the defendant's doubt and conflict with his present attorney is the following:
> 
>     1. The case has been pending for the past 6 months and the defendant's present attorney has fialed [*sic*] in a number of ways.
>
>     a. To visit defendant at his place of confinement, at a regular basis and discuss his case at length.
>     b. To inform defendant of any pertinent motions made, including any and all that have been filed on defendant's behalf.
>     c. Conduct an investigation, for the purpose of proving the defendant's lack of participation and knowledge of the alleged crimes he is being charged with.
>     d. Failure of attorney to challenge Constitutional issues and preserve right to appeal, during the pre-trial hearings.

In response to the motion counsel stated:

> I have always informed the Defendant of all motions that were made on his behalf or could have been made, and explained my strategy in failing to file any motions that I did not file . Furthermore, I made any and all arguments and motions requested by the Defendant, whether or not I believed them to be fruitful, except for those which I believed to be friviolous [*sic*] or detrimental to the furtherance

of justice, and in that case I did so only to avoid sanction by the Court or professional discipline for engaging in conduct detrimental to the furtherance of justice. In particular:

a ) Defendant requested that I file an interlocutory appeal of the decision denying Defendant's request to supress [*sic*] and/or exclude evidence and/or statements. I explained to Defendant that such appeals are strongly discouraged except in very unusual circumstances, which would not apply here, that such an appeal would almost certainly be dismissed, and would only serve to delay and impede justice. Therefore, I declined to file an interlocutory appeal.

b) Defendant asked me to make a motion pursuant to County Law 18-b to secure the services of a handwriting analysis expert to determine if the statements made by Detective Joseph DeSeve indicating that Defendant initialed a warning card were correct. I explained to Defendant that even if such an expert could determine that Defendant did not sign the, card, it is very unlikely that it would have changed the Court's ruling on Defendant's motions. Nevertheless, I contacted two handwriting analysis experts, and learned that the cost of a full investgation [*sic*] and report would likely exceed $2,000.00, and it was very unlikely that the Court would agree to allow 18-b funds to be expended for such a purpose.

Before the Appellate Division Petitioner argued that the trial court erred in not making even a minimal inquiry into Petitioner's allegations of the conflict between Petitioner and counsel, instead relying on the competing affidavits. The arguments presented before both the Appellate Division and this Court claim that this alleged conflict with counsel raises serious questions about the fairness of Petitioner's trial. Before the Appellate Division, Petitioner pointed to two "deficiencies": (1) the failure to file an interlocutory appeal from the ruling on the suppression motion; and (2) retention of the handwriting expert. In neither his briefing before the Appellate Division nor in his petition before this Court does Petitioner point to any other deficiency in the performance of trial counsel at trial.

In his traverse, Petitioner states: "I am not arguing any presumption of correctness, or incorrectness, concerning the decision-letter of June 26, 2002. I am saying that I never received this letter advising me of the court's denial. If I did, I would have pursued a more detailed and proper course of action in requesting new counsel; but, by not being advised of the court's denial, I was left in the dark." Petitioner does not indicate what that alternative course might have been, or the factual basis for it.

Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). This Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. First, it has not been argued that the reasons given for either decision made by trial counsel was inappropriate or incorrect. Second, even if it is assumed that trial counsel's representation was deficient, Petitioner has failed to show any prejudice. The fact that the issue was not raised on direct appeal eviscerates any argument that the failure to take an interlocutory appeal from the adverse ruling on the suppression motion was prejudicial. Petitioner makes no argument as to how there was any reasonable probability that the outcome of the suppression hearing would have been different even if a handwriting expert might have testified that the initials on the consent form were not Petitioner's. Indeed, given the fact that, according to the transcript of the suppression hearing, Petitioner testified he had been read his rights and understood them, it is more probable than not that the outcome would not have been different.

While, perhaps, the trial court should have made more searching inquiries, the record in this case reveals that the conflict, to the extent it existed, was not so great that it had resulted in a total lack of communication preventing an adequate defense. *See United States v. Simeonov*, 252 F.3d 238, 242 (2d Cir. 2001). The "conflict" was principally a disagreement over tactics, which normally does not support substitution of a new attorney. *See United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006). Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its

application of clearly established law was objectively unreasonable.  Petitioner has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  In particular, Petitioner has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Petitioner is not entitled to relief on the grounds raised.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, in its decision on appeal no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  May 19, 2008.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
